UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALI J. NAINI, | CASE NO. C19-0886-JCC |
| Plaintiff, | ORDER |
| v. | |
| KING COUNTY PUBLIC HOSPITAL DISTRICT NO. 2 d/b/a EVERGREEN HOSPITAL MEDICAL CENTER *et al.*, | |
| Defendants. | |

This matter comes before the Court on Defendant King County Public Hospital District No. 2's (Evergreen) motion for a protective order regarding Plaintiff's 30(b)(6) subpoena (Dkt. No. 50) and on Evergreen's motion to quash Plaintiff's subpoena to testify at a deposition in a civil trial to Al DeYoung (Dkt. No. 44). Having considered the parties' briefing and the relevant record, the Court GRANTS in part and DENIES in part the motion for a protective order. The also Court GRANTS in part and DENIES in part the motion to quash.

I. **BACKGROUND**

The Court previously laid out Plaintiff's allegations and the procedural history in this case; the Court will not repeat that information here. (*See* Dkt. No. 79 at 1–4.) To date, Plaintiff has deposed nine fact witnesses. (*See* Dkt. No. 45 at 2.) On August 22, 2019, Plaintiff served Al DeYoung, the Chairman of Evergreen's Board of Commissioners, with a subpoena to testify at a

deposition, (*see* Dkt. No. 45-1 at 36–40), which Plaintiff later supplemented with a second subpoena, (*see id.* at 42–46). On August 29, 2019, Plaintiff served Evergreen with a subpoena pursuant to Federal Rule of Civil Procedure 30(b)(6). (*See* Dkt. No. 52-5.) Six days later, Plaintiff served Evergreen with an amended deposition notice that included additional topics. (*See* Dkt. No. 52-6 at 4–6.)

Counsel for Plaintiffs and Defendants subsequently discussed the subpoenas for Mr. DeYoung and Evergreen, along with other discovery issues, via telephone on September 10. (*See* Dkt. No. 56-3 at 2.) During that discussion, Plaintiff clarified that his 30(b)(6) deposition would be his tenth deposition; the deposition of Mr. DeYoung would be Plaintiff's eleventh. (*See id.*) Plaintiff also agreed to narrow certain topics contained in the 30(b)(6) subpoena and amended notice. (*See id.*) However, the parties were unable to fully resolve their disputes regarding either the 30(b)(6) subpoena or Mr. DeYoung's subpoena. (*See id.*) Consequently, Evergreen filed a motion for a protective order limiting the scope of the 30(b)(6) subpoena and a motion to quash Mr. DeYoung's subpoena. (*See* Dkt. Nos. 44, 50.)

Amid the briefing for those motions, Plaintiff has made several requests of the Court. (*See* Dkt. No. 55 at 4.) Specifically, Plaintiff requests that the Court grant him leave to depose Mr. DeYoung, to depose Christine Abraham, and to re-open the deposition of Robert Geise. (*Id.*) Evergreen opposes those requests. (*See* Dkt. No. 59 at 1–2.)

## II. DISCUSSION

### A. Legal Standards

Discovery motions are strongly disfavored. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). One particular method of discovery is the Rule 30(b)(6) deposition. Under Rule 30(b)(6),

> [A] party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must

> then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify . . . . The persons so designated shall testify as to the matters known or reasonably available to the organization.

This procedure allows a party to obtain sworn admissions that are binding on the organization. *Hardin v. Wal-Mart Stores, Inc.*, 2011 WL 11563217, slip op. at 2 (E.D. Cal. 2011). Rule 30(b)(6) is, therefore, "a powerful and important discovery tool." *Id.*

While important, Rule 30(b)(6) is not without its limits. Embedded within Rule 30(b)(6) is the requirement that the party seeking the deposition "describe with reasonable particularity the matters for examination." This requirement ensures that the named organization has sufficient notice to prepare for the deposition. *See Buie v. District of Columbia*, 327 F.R.D. 1, 7 (D.D.C. 2018). In addition, a 30(b)(6) deposition must comply with the requirements of Rule 26. *See id.* at 7 n.3 (distinguishing between Rule 30(b)(6)'s reasonable particularity requirement and Rule 26's requirements). A 30(b)(6) deposition must therefore seek information that is "relevant" and "proportional." Fed. R. Civ. P. 26(b)(1). Relevant information is "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Proportionality is a matter of "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

If a party believes that a Rule 30(b)(6) subpoena or notice is improper, then it may move for a protective order. Fed. R. Civ. P. 26(c)(1). The party seeking a protective order bears the burden of showing that there is good cause for the court to issue the order. *In re Roman Catholic Archbishop of Portland*, 661 F.3d 417, 424 (9th Cir. 2011).

### B. The 30(b)(6) Deposition

Plaintiff's 30(b)(6) subpoena and amended notice seeks information on 13 topics. (*See* Dkt. No. 52-6 at 3–5.) The Court will address each topic in turn.

1. Topic 1

Topic 1 seeks two categories of information: (1) information about "Evergreen's policies and procedures with regard to decisions to resuscitate designations for Intensive Care Unit patients," and (2) "documentation of the discussions by any providers or staff with [Plaintiff's] patients regarding code status changes throughout a patient's hospital stay." (*See* Dkt. No. 52-6 at 3.)

Evergreen does not appear to object to Plaintiff's request for the first category of information, and that information is relevant to Plaintiff's claim that Defendants campaigned to have his privileges revoked after he raised concerns about ICU physicians improperly advising patients to consent to Do Not Resuscitate designations. (*See* Dkt. No. 23 at 8–9, 11, 45–46.) The first category in topic 1 is therefore appropriate.

While Evergreen does not object the first category of information, Evergreen does object to the second category, arguing that it would require research into and testimony regarding hundreds of patients. (*See* Dkt. Nos. 50 at 10, 59 at 4.) In response, Plaintiff states that he is "willing to limit the specific patients at issue to those for whom their relatives or surrogates have submitted declarations and/or for whom Defendants have requested that [Plaintiff] produce their entire medical records." (Dkt. No. 55 at 11.) But Plaintiff's offer is apparently not enough for Evergreen; it insists that "topic 1 is better suited to the specific individuals involved in those decisions, not the hospital's corporate representative." (Dkt. No. 59 at 4.)

Even if an individual could testify about the topics in a Rule 30(b)(6) notice, a 30(b)(6) deposition is not necessarily cumulative. *See Sunwood Condo. Ass'n v. Travelers Cas. Ins. Co. of Am.*, Case No. C16-1012-JCC, slip op. at 2 (W.D. Wash. 2017) (citing *Mitchell Eng'g v. City and County of San Francisco*, 2010 WL 455290, slip. op. at 1 (N.D. Cal. 2010)). This is because an individual's testimony binds only that person, whereas a 30(b)(6) deposition binds the entity. *Id.* (citing *Appleton Papers Inc. v. George A. Whiting Paper Co.*, 2009 WL 2870622, slip op. at 2 (E.D. Wis. 2009)). Accordingly, so long as it is relevant for a party to seek an entity's position

on a subject, it is appropriate for the party to question the entity about the subject at a 30(b)(6) deposition. *See id.* An entity's position is ordinarily relevant when the entity is a party to a case. *See id.* ("The need to discover an entity's position makes sense in certain contexts, such as when that entity is the opposing party.")

Here, it is relevant for Plaintiff to seek Evergreen's position on the discussions that providers or staff had with certain patients. Those discussions might shed light on the decision to terminate Plaintiff's privileges, and Plaintiff has named Evergreen as a party who is liable for that decision. *See Sunwood*, Case No. C16-1012-JCC, slip op. at 2; (Dkt. Nos. 28 at 5, 98 at 5). Consequently, the second category in topic one is relevant and proportional if limited according to Plaintiff's stipulation.

### 2. Topic 2

Topic 2 seeks "information as to when individual patient resuscitation status changes were made," including financial information about those status changes. (*See* Dkt. No. 52-6 at 3.) Evergreen objects to topic 2 because it is not limited to specific patients and it purportedly seeks irrelevant information. (*See* Dkt. No. 50 at 10.) The first objection is well-taken, and Plaintiff has agreed to limit his request to the previously-mentioned subset of his patients. (*See* Dkt. No. 55 at 11.) The second objection, however, fails to appreciate the low bar for relevance. Relevant information is "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc.*, 437 U.S. at 351. Plaintiff has met this low bar because the requested financial information could reveal whether Evergreen had a financial motive to ignore his complaints and suspend his privileges.[1] (*See, e.g.*,

---

[1] Evergreen claims, "Nowhere in Plaintiff's Complaints does he assert any belief that his alleged disagreement with how ICU physicians counseled mutual patients was financially motivated." (Dkt. No. 50 at 11.) This is wrong. Plaintiff's third amended complaint alleges, "Defendants had and have an economic motive to provide less care to certain patients in the ICU and to transfer those patients to a hospice owned by Evergreen. Defendants had and have an economic interest in depriving [Plaintiff] of his privileges and practice at Evergreen Hospital." (Dkt. No. 28 at 41–42.)

Dkt. No. 28 at 41–42).

In its reply, Evergreen also argues that "Defendants have already answered topics 2 and 3 to the best of their ability." (Dkt. No. 59 at 4.) But a deposition topic is not "unreasonably cumulative" just because a party explored the topic through interrogatories or requests for production. *See* Fed. R. Civ. P. 26(b)(2)(C)(i); *Bizzaro v. First Am. Title Co., LLC*, 2016 WL 2939146, slip. op. at 3 (D. Utah 2016) ("Even if the requests were identical, it is not always unreasonable to allow both interrogatories and a designee deposition regarding the same subject matter."). The reason is simple: there is a meaningful difference between receiving a document from an entity and asking the entity's corporate representative about that document live and under oath. Thus, topics 2 and 3 are relevant and proportional even if Defendants have already provided information relating to those topics.

3. Topic 3

Topic 3 asks about "Evergreen's policies and procedures with regard to transferring Evergreen patients to end-of-life care at Evergreen's Hospice Care facilities." (*See* Dkt. No. 52-6 at 3.) As with topics 1 and 2, Plaintiff is willing limit topic 3 to Plaintiff's patients "for whom their relatives or surrogates have submitted declarations and/or for whom Defendants have requested that [Plaintiff] produce their entire medical records." (*See* Dkt. No. 55 at 11.) This limitation resolves Evergreen's concerns about the burdens imposed by topic 3. (*See* Dkt. No. 50 at 10.)

4. Topic 6

Topic 6 seeks "Evergreen's policies and procedures for peer review" and "[d]ocumentation related to any decision or recommendation made by Evergreen peer review since 2015." (*See* Dkt. No. 52-6 at 4.) Evergreen argues that Topic 6 "seek[s] testimony of privileged attorney/client discussions." However, "the topic is not, in and of itself, protected from questioning under the attorney-client privilege." *Erickson v. Biogen, Inc.*, Case No. C18-1029-JCC, slip op. at 3 (W.D. Wash. 2019). Accordingly, "the Court need not strike the entire

question as violative of the attorney-client privilege. Independent objections can be made on this basis at the deposition." *Id.*

      5.      <u>Topic 7</u>

Topic 7 seeks "Evergreen's strategic direction and plans for the neurosurgery department with regard to the use of hospital-employed physicians versus third-party practices for the provision of neurosurgery services." (Dkt. No. 52-6 at 4.) Evergreen objects to this topic on several grounds. First, Evergreen observes that the topic is not limited to a specific point in time. (*See* Dkt. No. 50 at 11.) Plaintiff recognizes this issue and agrees to limit topic 7 to 2016 onward. (*See* Dkt. No. 55 at 12.) Second, Evergreen asserts that the topic seeks "commercially sensitive information." (*See* Dkt. No. 59 at 5.) But "there is no absolute privilege for trade secrets and similar confidential information," *Fed. Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 362 (1979) (citing 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2043 (1970)), and Evergreen does not even try to "demonstrate by competent evidence that the information sought through discovery is a trade secret and that disclosure of the secret might be harmful." *De Law Torre v. Swift Transp. Co.*, 2014 WL 3695798, slip op. at 2 (E.D. Cal. 2014) (quoting *Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*, 107 F.R.D. 288, 292 (D.C. Del. 1985)). Third, Evergreen argues that the phrase "strategic direction and plans" is not particular enough. (*See* Dkt. No. 59 at 5.) Yet, the phrase is no more ambiguous than language like "policies and procedures" to which Evergreen does not object. And a deposition topic need not be free from all ambiguity because ambiguity is, to some degree, inevitable.

      6.      <u>Topic 8</u>

Topic 8 seeks responses about "[t]he applicability of Evergreen's Medical Staff Bylaws to Evergreen's actions with regard to [Plaintiff's] 2018 application for renewal of privileges," including whether specific actions in the case complied or did not comply with the Bylaws. (*See* Dkt. No. 52-6 at 4.) In response to Evergreen's argument that topic 8 impermissibly seeks legal conclusions, (*see* Dkt. No. 50 at 7), Plaintiff agrees to "narrow the topic and clarify that he seeks

testimony regarding the meaning of the bylaws provisions concerning medical staff privileging decisions, rather than whether specific actions taken by Evergreen complied with those provisions," (s*ee* Dkt. No. 55 at 8). However, Evergreen asserts that even as narrowed, the topic still impermissibly seeks legal conclusions. (*See* Dkt. No. 58 at 3.)

It is ordinarily improper for a party to seek discovery about the opposing party's legal conclusions. *See, e.g.*, *Cardinal Aluminum Co. v. Cont'l Cas. Co.*, Case No. C14-0857-TBR-LLK, slip op. at 3–4 (W.D. Ky. 2015) (citing *Byrd v. Wal-Mart Transp., LLC*, 2009 WL 3055303, slip op. at 2 n.3 (S.D. Ga. 2009)); *T&H Landscaping, LLC v. Col. Structures Inc.*, 2007 WL 2472056, slip op. at 4 (D. Colo. 2007). This principle does not exist because a party's legal conclusions are secret (they are not). Rather, the principle stems from the general rule that a party may request information only if that information is "relevant." *See Cardinal Aluminum Co.*, Case No. C14-0857-TBR-LLK, slip op. at 3–4. Legal conclusions are rarely relevant because they are usually not admissible at trial as evidence. *See id.*

While a party's legal conclusions are normally not a relevant subject for discovery, a party's belief about the law could be. In the criminal law context, for example, a defendant's belief about the law might be relevant to whether the defendant acted in good faith. *See United States v. Napout*, 2017 WL 6375729, slip op. at 11 (E.D.N.Y. 2017) (holding defendant's belief about foreign law was relevant to showing his good faith). Thus, in some circumstances, it makes sense for a party to depose a witness about what the witness believes the law to be.

Here, Evergreen's belief about the meaning of its bylaws is relevant. Plaintiff alleges that Evergreen acted in bad faith when it suspended his hospital privileges. (*See, e.g.*, Dkt. No. 28 at 44.) Relevant to the issue of bad faith is whether Evergreen believed that the bylaws entitled Plaintiff to procedural protections and chose to not give Plaintiff those protections. Consequently, Plaintiff may ask Evergreen what it believed the bylaws to mean.

7. <u>Topic 9</u>

Topic 9 seeks statistical information about "applications filed by members of Evergreen's

medical staff for renewal of privileges since 2001." (*See* Dkt. No. 52-6 at 4.) As with virtually all of the other topics, Evergreen also objects to topic 9. Evergreen first observes that Plaintiff could have sought the statistical information through interrogatories or requests for production. (*See* Dkt. No. 50 at 13.) This is true, but as previously discussed, there is a difference between seeing statistics on a page and asking a corporate representative to explain those statistics at a deposition. *See Bizzaro* 2016 WL 2939146, slip. op. at 3. Thus, Plaintiff may ask about the statistical information at a 30(b)(6) deposition even if Evergreen could have produced the information in another form. Evergreen next points out that Plaintiff already deposed Dr. Kevin Hanson about the statistical information. (*Id.*) But Dr. Kevin Hanson's position on the information is not the same as Evergreen's position, and Evergreen's position is relevant because Evergreen is a party. *See Sunwood*, Case No. C16-1012-JCC, slip op. at 2.

        8.      <u>Topic 10</u>

Topic 10 asks about "the end of employment at Evergreen of Dr. Amy Beiter, Dr. Emun Abdu, and Dr. Peter Nora, as well as the departure from the Evergreen medical staff of Dr. Christine Price." (*See* Dkt. No. 52-6 at 4.) Evergreen argues that the departures of these nonparty physicians are irrelevant to Plaintiff's claims. (*See* Dkt. No. 50 at 11.) Plaintiff argues in response that the "sudden spate of departures is relevant regarding [Plaintiff's] claims . . . that he was damaged by a culture of retaliation, hostility to physician concerns, and inadequate patient care at Evergreen." (*See* Dkt. No. 55 at 9–10.)

A person's reasons for departing from a job can be highly sensitive. The person might leave their job because they were harassed by a coworker, because they struggled with a mental illness, or because they made an embarrassing mistake. Given the potentially sensitive nature of the subject, courts take "special care" before allowing discovery into private aspects of a person's employment history. *See Boltzer v. L-3 Commc'ns Corp.*, 287 F.R.D. 507, 510 (D. Ariz. 2012) ("Personnel files may contain information that is both private and irrelevant to the case, therefore special care must be taken before personnel files are turned over to an adverse party.");

*cf. Seattle Times Co. v. Rinehart*, 467 U.S. 20, 35 n.21 (1984) ("Although [Rule 26(c)] contains no specific reference to privacy . . . such matters are implicit in the broad purpose and language of the Rule."). Thus, while private aspects of a person's employment history are discoverable if relevant, *see Lauer v. Longevity Med. Clinic PLLC*, Case No. C13-0860-JCC, slip op. at 4 (W.D. Wash. 2014) (requiring disclosure of personnel files in employment discrimination case because those files could provide evidence of "comparators" and a "pattern or practice" of discrimination), there must be an "objective basis" to believe that those aspects might be relevant. *See Paschal v. Am. Family Mut. Ins. Co.*, Case No. C14-1640-RSM, slip op. at 4 (W.D. Wash. 2015) (denying request for personnel files where plaintiff provided no "objective basis" to believe that those files would reveal that defendant offered employees incentives to undervalue claims); *Darwish v. Family Dollar Stores, Inc.,* 2010 WL 2086107, slip op. at 2 (D. Colo. 2010) ("[S]eeking such records about a nonparty witness without some basis in fact is the classic fishing expedition."); *Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 23–24 (D.D.C. 2005) (limiting discovery of employment records of non-parties to "records involving possible patterns similar to the facts in the present case"). The theoretical possibility that those aspects could somehow be relevant is not enough.

Here, Plaintiff offers no objective basis to believe that the circumstances surrounding the departures of Dr. Beiter, Dr. Abdu, Dr. Nora, or Dr. Price are relevant. Plaintiff's central claim is that Defendants retaliated against him because he raised concerns about how physicians in Evergreen's ICU were improperly advising elderly patients to consent to DNR designations or transfers to end-of-life palliative care. (*See* Dkt. No. 98 at 9–12, 47–48, 51.) Plaintiff could try to prove this claim by showing that Evergreen had a "pattern or practice" of retaliating against physicians who raise such concerns, *see Lauer*, Case No. C13-0860-JCC, slip op. at 4, but he offers nothing to suggest that Dr. Beiter, Dr. Abdu, Dr. Nora, or Dr. Price ever raised concerns similar to Plaintiff's—or that they raised concerns at all, (*see* Dkt. No. 55 at 9–10). Instead, Plaintiff offers the mere fact that those people left their positions as evidence enough that

Evergreen may have retaliated against them. (*See id.*) This is hardly evidence that those individuals' departures "involv[e] possible patterns similar to the facts in the present case," *Thurgood Marshal Academy*, 230 F.R.D. at 23–24. And absent such evidence, the Court will not allow Plaintiff to invade peoples' privacy in the hope that something relevant turns up. *See Paschal*, Case No. C14-1640-RSM, slip op. at 4; *Darwish*, 2010 WL 2086107, slip op. at 2.

9. Topic 11

Topic 11 seeks information about "the preservation or lackthereof of notes taken during committee meetings . . . which formed the basis of official minutes of those meetings." (*See* Dkt. No. 52-6 at 4–5.) Evergreen objects to topic 11 because it is unlimited as to time and the type of committees at issue. (*See* Dkt. No. 50 at 13.) Plaintiff agrees to limit the topic to span from 2016 to the present and to cover only certain committees. (*See* Dkt. No. 55 at 10.) As limited, topic 11 seeks information that is relevant and proportional to the needs of the case.

10. Topic 13

Topic 13 seeks information concerning "the identification, gathering, and production of documents responsive to [Plaintiff's] discovery requests to Evergreen in this lawsuit." (*See* Dkt. No. 52-6 at 5.) Evergreen argues that a designated representative could not meaningfully testify about the topic because document retrievals were overseen by attorneys. (*See* Dkt. No. 50 at 7–8.) And because attorneys were responsible for the document retrievals, Evergreen also argues that the topic requests information that is protected by attorney-client privilege and the work product doctrine. (*See id.*) Plaintiff does not substantively contest Evergreen's arguments, (*see* Dkt. No. 55 at 7), and those arguments are well-taken, *see Club v. BNSF Ry. Co.*, Case No. C13-0967-JCC, slip op. at 5 (W.D. Wash. 2016). Accordingly, Plaintiff may not ask about topic 13.

**C.     Plaintiff's Request for Leave to Take the Deposition of Ms. Abraham**

Rule 30(a)(2)(A) states that a party "must obtain leave of court" to take a deposition if (1) the deposition would result in the party taking more than 10 depositions and (2) the parties have not stipulated to the deposition. Evergreen does not stipulate to Plaintiff taking more than 10

depositions. (*See* Dkt. No. 56-3 at 2.) Consequently, if Plaintiff wishes to take more than 10 depositions, then he must obtain the Court's leave to do so. Fed. R. Civ. P. 30(a)(2)(A).

In Plaintiff's response to Evergreen's motion for a protective order, Plaintiff requests leave to take the deposition of Christine Abraham.[2] (*See* Dkt. No. 55 at 2.) Under Rule 30(a)(2), the Court "must grant leave" if the deposition is relevant and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1), 30(a)(2). Here, the deposition of Christine Abraham seeks relevant and proportional information because she sent the broadcast email announcing Plaintiff's "resignation"—a central event in this case. (*See* Dkt. No. 55 at 2.) Accordingly, the Court GRANTS Plaintiff leave to take the deposition of Christine Abraham.

### D. Plaintiff's Request for Leave to Re-open the Deposition of Dr. Geise

Plaintiff also requests leave to re-open the deposition of Dr. Geise. Dr. Geise's deposition was first taken before many of the significant events in this case occurred. (*See id.* at 2.) Consequently, Plaintiff has good cause to re-open Dr. Geise's deposition. The Court therefore GRANTS Plaintiff leave to re-open Dr. Geise's deposition.

### E. Plaintiff's Request to Depose Mr. DeYoung and Defendant's Motion to Quash the Subpoena of Mr. DeYoung

Plaintiff further requests leave to depose Mr. DeYoung. Evergreen objects to Plaintiff's request on the grounds that it violates the "apex doctrine" and seeks irrelevant information. (*See* Dkt. No. 44 at 8–11.) The apex doctrine allows a court to limit depositions of high-level corporate management to prevent harassment. *Rookaird v. BNSF Ry. Co.*, Case No. C14-0176-RSL, slip op. at 1–2 (W.D. Wash. 2015). Depositions of such individuals are allowed if (1) the deponent has "unique first-hand, non-repetitive knowledge of the facts at issue in the case" and

---

[2] Evergreen objects to Plaintiff's requests for leave as procedurally improper. (*See* Dkt. No. 59 at 1–2.) Evergreen has, however, fully briefed the merits of Plaintiff's requests. (*See generally* Dkt. Nos. 44, 57, 59.) Consequently, Evergreen will not be prejudiced if the Court reaches the merits of Plaintiff's requests. The Court therefore construes the requests in Plaintiff's response as a motion for leave and will address the merits of those requests.

(2) "the party seeking the deposition has exhausted other less intrusive methods." *Id.* at 1. In this case, Plaintiff has shown that Mr. DeYoung has personal knowledge of relevant facts. Mr. DeYoung is the Chairman of Evergreen's Board of Commissioners. (*See* Dkt. No. 53 at 2.) In that position, Mr. DeYoung has had unique access to important decisions bearing directly on this case, including the ultimate termination of Plaintiff's privileges. (*See id.* at 5.) In addition, Plaintiff has sought and failed to obtain clear answers to questions about those decisions. For example, Plaintiff has struggled to determine what, exactly, occurred during the critical Board meeting on January 15, 2019. (*See id.* at 5–6.) Mr. DeYoung could shed light on both that meeting and other important events. The Court therefore GRANTS Plaintiff leave to depose Mr. DeYoung.

Although a deposition of Mr. DeYoung is proper, topic 4 of Plaintiff's subpoena of Mr. DeYoung seeks irrelevant information. Topic 4 requests information relating to the end of Robert Malte's, Dr. Beiter's, Dr. Abdu's, Dr. Nora's, and Dr. Geise's employment at Evergreen. (*See* Dkt. No. 44 at 5.) As discussed previously, Plaintiff has not provided any objective basis to believe that the end of the employment of Dr. Beiter, Dr. Abdu, Dr. Nora, or Dr. Geise is relevant to the claims he brings against Defendants. *See supra* Section II.B.8. And Plaintiff does not explain why the end of Mr. Malte's employment is relevant beyond the fact that he was previously Evergreen's CEO. (*See* Dkt. No. 53 at 7.) Consequently, the Court GRANTS Evergreen's motion to quash only with respect to topic 4.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Evergreen's motion to quash Plaintiff's subpoena to testify at a deposition in a civil trial to Al DeYoung (Dkt. No. 44); GRANTS Plaintiff's request for leave to take an eleventh and twelfth deposition, (*see* Dkt. No. 55 at 4–5); GRANTS Plaintiff's request for leave to re-open a deposition, (*see id.*); and GRANTS in part and DENIES in part Evergreen's motion for a protective order regarding Plaintiff's 30(b)(6) subpoena (Dkt. No. 50). The Court ORDERS Plaintiff to amend the topics of

the 30(b)(6) deposition as follows:

1. For topic 1, Plaintiff must limit the specific patients at issue to those for whom their relatives or surrogates have submitted declarations and/or for whom Defendants have requested that Plaintiff produce their entire medical records.
2. For topic 2, Plaintiff must limit the specific patients at issue to those for whom their relatives or surrogates have submitted declarations and/or for whom Defendants have requested that Plaintiff produce their entire medical records/
3. For topic 3, Plaintiff must limit the specific patients at issue to those for whom their relatives or surrogates have submitted declarations and/or for whom Defendants have requested that Plaintiff produce their entire medical records.
4. For topic 7, Plaintiff must limit the topic to 2016 onward.
5. For topic 8, Plaintiff must narrow the topic so that he seeks testimony regarding the meaning of the bylaws provisions concerning medical staff privileging decisions. Plaintiff is prohibited from inquiring whether specific actions taken by Evergreen complied with those provisions.
6. Plaintiff is prohibited from inquiring about topic 10.
7. For topic 11, Plaintiff must limit the topic to span from 2016 to the present and to cover only the following committees: (1) the Quality Peer Review Committee; (2) the Medical Executive Committee; (3) the Credentials Committee; (4) the Board of Commissioners (with regard to their meetings on medical staff privileging applications); and (5) the June 28, 2016 ad hoc meeting between Defendant Robert Geise and the hospitalists/intensivists concerning Plaintiff.
8. Plaintiff is prohibited from inquiring about topic 13.

//
//
//

1    DATED this 17th day of December 2019.

_____
John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER
C19-0886-JCC
PAGE - 15