THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALI J. NAINI, | CASE NO. C19-0886-JCC |
| Plaintiff, | ORDER |
| v. | |
| KING COUNTY PUBLIC HOSPITAL DISTRICT NO. 2 d/b/a EVERGREEN HOSPITAL MEDICAL CENTER *et al.*, | |
| Defendants. | |

This matter comes before the Court on Defendants' motion for a stay of proceedings (Dkt. No. 128). Having considered the parties' briefing and the relevant record, the Court hereby GRANTS the motion for the reasons explained herein.

**I.     Background**

The Court previously discussed the complex factual and procedural history in this case and will only briefly address that history here. (*See, e.g.*, Dkt. No. 149 at 1–7.) From the middle of 2016 to the beginning of 2019, Defendant King County Public Hospital District No. 2 ("Evergreen") reviewed Plaintiff's clinical competency and professional conduct. (*See id.* at 3–6.) That review focused on, among other things, Plaintiff's treatment of patients in 2018. (*See id.* at 5.) In January 2019, Evergreen's Credentials Committee ("CC") and Medical Executive Committee ("MEC") recommended that Evergreen's Board of Commissioners not renew

ORDER
C19-0886-JCC
PAGE - 1

Plaintiff's hospital privileges. (*Id.* at 5–6.) Defendants claim that the CC and MEC's recommendations were based on Plaintiff's clinical competency and professional conduct, (*see* Dkt. No. 144 at 5–6); Plaintiff alleges that those bases were pretextual, (*see* Dkt. No. 145 at 2).

On January 17, 2019, Plaintiff was told that he was barred from practicing medicine at Evergreen because Evergreen's Board of Commissioners had voted on January 15, 2019, to accept the CC and MEC's recommendations to not renew his privileges. (Dkt. Nos. 97-48 at 53–55, 97-54 at 2.) Plaintiff quickly moved to have the King County Superior Court temporarily reinstate his privileges. (Dkt. No. 14-26 at 26.) The Superior Court granted Plaintiff's motion on February 1, 2019. (Dkt. No. 16-13 at 4.) Plaintiff subsequently brought claims for damages against several Defendants, alleging that those Defendants violated his constitutional rights when the Board purportedly voted to not renew his privileges on January 15, 2019. (Dkt. No. 28 at 41–49.) Defendants claim that the Board never took such a vote and that Defendants did not violate Plaintiff's constitutional rights even if the Board did take such a vote. (*See* Dkt. No. 144 at 16.)

While litigation regarding Plaintiff's claims for damages was proceeding in this Court, Defendants continued to engage in peer review of Plaintiff's treatment of patients in 2018. (*See* Dkt. No. 115-5 at 2–3.) That review culminated in the CC voting unanimously on October 30, 2019, to recommend that Evergreen suspend Plaintiff's privileges. (Dkt. No. 111 at 6.)

Several days after the CC's vote, one of Plaintiff's patients died. (*Id.*) The patient's death prompted Evergreen to investigate Plaintiff's care of the patient. (*See* Dkt. No. 86 at 3.) On November 14, 2019, Dr. Jeffrey Tomlin, Evergreen's CEO, notified Plaintiff that Evergreen was summarily suspending Plaintiff's privileges based on his care of the patient. (Dkt. No. 111 at 8.) Then, on December 11, 2019, Evergreen notified Plaintiff by letter that the MEC had voted to approve the CC's recommendation to terminate his privileges. (Dkt. No. 114-4 at 2–4.) Although the CC purportedly based its recommendation on the 2018 cases, the letter stated that the MEC based its decision on both the 2018 cases and Plaintiff's treatment of the recently deceased patient. (*Id.*)

On January 8, 2020, Plaintiff formally invoked his right under Evergreen's bylaws to a fair hearing about the MEC's recommendation. (Dkt. No. 129-4 at 2.) The next day, Defendants moved for a stay of judicial proceedings pending the resolution of the fair hearing process. (Dkt. No. 128.)

## II. Discussion

Defendants argue that a stay is warranted because "[t]here will be substantial overlap between the [fair hearing process and the trial], and findings and conclusions related to one will undoubtedly affect the other." (Dkt. No. 128 at 9.) Plaintiff, on the other hand, argues that a stay is unwarranted because the fair hearing process will not be dispositive of his constitutional claims and there is uncertainty as to how long the process will take. (*See* Dkt. No. 150 at 7–10.)

"The power to grant a stay in pending litigation is incidental to the power inherent in every court to control the disposition of the cases on its docket." *Landis v. North Am. Co.*, 299 U.S. 248, 254–55 (1936). "The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997). In deciding whether to grant a stay, courts consider "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

Here, neither Plaintiff nor Defendants are likely to suffer genuine hardship if the Court grants or denies a stay. A stay is, however, in the interest of judicial economy. Accordingly, a limited stay of proceedings is appropriate.

### 1. Damage that May Result to Plaintiff

Plaintiff is unlikely to suffer concrete hardship if the Court grants a stay. Plaintiff primarily seeks money damages. (*See* Dkt. No. 138 at 1–3.) Courts routinely grant stays that would delay recovery of money damages because money damages compensate a plaintiff for

ORDER
C19-0886-JCC
PAGE - 3

their injury regardless of when the money damages are awarded. *See CMAX*, 300 F.2d at 268–69; *Intellectual Ventures II LLC v. U.S. Bancorp*, 2014 WL 5369386, slip op. at 5 (D. Minn. 2014); *I.K. ex rel. E.K. v. Sylvan Union Sch. Dist.*, 681 F. Supp. 1179, 1191 (E.D. Cal. 2010) (citing *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005)).

While Plaintiff is unlikely to suffer concrete hardship, he appears to argue that lengthy stays are inherently prejudicial and that a stay should not be granted because Evergreen's fair hearing process may take a long time to complete. (*See* Dkt. No. 150 at 9.) But the Ninth Circuit has held that "it is within the district court's discretion to grant or deny [lengthy or indefinite] stays, after weighing the proper factors." *Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718, 723–24 (9th Cir. 2007) (holding such stays are appealable but cautioning, "we do not mean to intimate that they are invariably improper or inappropriate"). Moreover, the Court is reasonably confident that a stay will not be indefinite. Evergreen's bylaws establish deadlines for certain aspects of the fair hearing process, provide mechanisms to speed up the proceedings, and require "good cause" for delays. (*See* Dkt. No. 151-1 at 8) ("Except where impractical, the initial Hearing date shall be not less than thirty (30) days nor more than sixty (60) days from the date of receipt of the request for Hearing . . . . All time limits may be reduced or enlarged by mutual agreement."); (*id.* at 15) ("Within 15 days after final adjournment of the Hearing, the Hearing Officer or Hearing Committee shall render a decision in writing . . . ."); (*id.* at 18) ("[A]ppellate review . . . shall commence not less than fifteen (15) days nor more than sixty (60) days from receipt of the request for appellate review. . . . The commencement of appellate review may be extended for good cause . . . .").

    2.    <u>Potential Hardship or Inequity that Defendants Might Suffer</u>

Defendants are unlikely to suffer hardship if the Court denies a stay. Defendants argue that "[e]ngaging in concurrent proceedings involving the same facts, same patients, same experts, etc, is prejudicially costly." (Dkt. No. 128 at 8.) However, "being required to defend a suit, without more, does not constitute a clear case of hardship or inequity." *Lockyer*, 398 F.3d at

1112; *Nat. Res. Def. Council, Inc. v. County of Los Angeles*, 2015 WL 13385916, slip op. at 4–5 (C.D. Cal. 2015). That said, even if a stay is not necessary to avoid hardship, a stay can be appropriate if it serves the interests of judicial economy. *Natural Resources*, 2015 WL 13385916, slip op. at 5. The Court finds that factor to be dispositive here.

### 3. The Orderly Course of Justice"

"The orderly course of justice"—*i.e.*, judicial economy—weighs in favor of granting a stay. The parties intend to extensively argue at trial over the propriety of the CC and MEC's recommendations in January 2019. (*See* Dkt. No. 138 at 9–26.) In doing so, the parties plan to discuss Evergreen's review of Plaintiff's 2018 cases. (*See* Dkt. No. 128 at 10 n.6.) That review will also be discussed and debated during the fair hearing process. (*See* Dkt. No. 114-4 at 2–4) (letter explaining that the MEC's decision was based in part on the review of Plaintiff's 2018 cases). The fair hearing process will, therefore, provide an opportunity for the parties to address factual issues that are integrally linked to the upcoming trial. Accordingly, a stay would serve the interests of judicial economy even though the fair hearing process cannot resolve the legal questions presented in this case. *See Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979) ("A trial court may . . . stay an action before it, pending resolution of independent proceedings which bear upon the case. This rule . . . does not require that the issues in such proceedings are necessarily controlling of the action before the court.").

### 4. Scope of the Stay

Although a stay is appropriate, it unnecessary for the Court to stay proceedings in their entirety. The Court will continue to consider Plaintiff's outstanding motion to compel (Dkt. No. 47). In addition, Plaintiff has said that he needs to engage in limited discovery because Defendants recently produced a large volume of documents. (*See* Dkt. No. 161 at 2.) It is appropriate for Plaintiff to finish that discovery. It is also appropriate for the parties to finish briefing Plaintiff's motion for sanctions (Dkt. No. 159). Resolution of that motion will not

overlap with the issues that the fair hearing process will address. Finally, Defendants recently filed a supplemental memorandum addressing legal issues that could resolve Plaintiff's outstanding claims. (Dkt. No. 166.) It is appropriate for the Court to consider those legal issues while the fair hearing process moves forward.[1]

## III. Conclusion

For the foregoing reasons, the Court GRANTS Plaintiff's motion for a stay of proceedings (Dkt. No. 128) and STAYS all but the following proceedings in this case:

1. Plaintiff's outstanding motion to compel (Dkt. No. 47);
2. Discovery necessitated by Defendants' recent production of documents;
3. Plaintiff's motion for sanctions (Dkt. No. 159); and
4. Defendants' supplemental memorandum (Dkt. No. 166).

DATED this 29th day of January 2020.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

[1] The Court will issue a minute order establishing a briefing schedule for the issues addressed by Defendants' memorandum.